*Tagged Opinion*
*For Publication*



ORDERED in the Southern District of Florida on August 2, 2016.

Laurel M. Isicoff, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                            Case No. 16-12135-BKC-LMI

GASTON BENZAQUEN                                  Chapter 13

    Debtor.
_____/

### ORDER GRANTING DEBTOR'S MOTION FOR
### ENFORCEMENT OF THE AUTOMATIC STAY

This matter came before me upon the Debtor's Expedited Motion to Enforce Automatic Stay (the "Motion") (ECF #17). The Debtor is asking me to find that Bank of the West has violated the automatic stay by refusing to release a writ of garnishment the bank obtained in a state court proceeding. In order to resolve this dispute I must consider first, whether a 2008 change in Florida Statute §655.79 modifies the six unities required to create a tenancy by the

entirety as described in *Beal Bank, SSB v. Almand and Assoc.,* 780 So. 2d 45 (Fla. 2001) (*"Beal Bank"*).[1] Second, I must decide whether the exempt status of homestead funds is lost when funds are deposited into a bank account initially in the name of only one spouse. I have reviewed the pleadings[2] and the evidence presented at the evidentiary hearing on May 26, 2016. For the reasons more fully outlined below, I find that the funds Bank of the West garnished are exempt funds and that Bank of the West must direct release of the funds immediately.

## FACTS[3]

Gaston Benzaquen (the "Debtor") filed his Voluntary Chapter 13 Petition (ECF #1) on February 16, 2016 (the "Petition Date"). The Debtor's Initial Schedules (ECF #41) list a savings account at TD Bank, account #x2222 (the "Account") with a Petition Date balance of approximately $237,600.

Prior to the Petition Date, Bank of the West obtained a $118,664.85 judgment against the Debtor in the Circuit Court of the 17th Circuit in and for Broward County, Florida, arising out of the case *Bank of the West v. Gaston Benzaquen*, case number CAC-2014-09003 (the "State Court Case"). Bank of the West recorded a Judgment Lien Certificate with the Florida Secretary of State (ECF #2). Subsequently Bank of the West served a writ of garnishment on the Account, and TD Bank set aside funds in the Account.

On February 17, 2016, the Debtor served and filed a suggestion of bankruptcy in the State Court Case; however, Bank of the West has failed to release the writ of garnishment.

---

[1] I have jurisdiction of this contested matter pursuant to 28 U.S.C. §157(b)(2)(B) and (G).
[2] The Motion, Secured Creditor, Bank of the West's Response to Debtor's Motion for Enforcement of the Automatic Stay and Incorporated Motion for Relief from the Automatic Stay (the "Response") (ECF #35), Reply to Bank of the West's Response to Debtor's Motion for Enforcement of the Automatic Stay (the "Reply") (ECF #46), the Joint Prehearing Stipulation of Undisputed Facts, Disputed Facts, and Issues of Law to be Litigated (the "Joint Prehearing Stipulation") (ECF #79), Secured Creditor, Bank of the West's Opening Statement (ECF #82), Debtor's Opening Statement (ECF #86), the Debtor's Closing Argument (ECF #94), and Bank of the West's Closing Argument (ECF #95).
[3] The following constitute my findings of fact and conclusions of law under Bankruptcy Rule 7052.

Because Bank of the West refused to release the writ of garnishment, the Debtor filed the Motion (ECF #17), asserting that the refusal by Bank of the West to turn over the garnished funds is a violation of the automatic stay, and requesting relief under 11 U.S.C. §362(k). Although the Debtor is not contesting the validity of the judgment lien, he is asserting that the garnished funds are joint funds not subject to garnishment for a debt owed solely by him. On schedule C the Debtor listed the Account as exempt because it is held as Tenants by the Entirety ("TBE") with his wife, Deborah Wahnich; however, Bank of the West disputes the TBE status of the Account. Accordingly I conducted an evidentiary hearing on May 26, 2016.

## FACTS

The Debtor's wife opened a savings accounts online at TD Bank on Friday April 5, 2013. The Debtor's wife electronically deposited $20,000 when she opened the Account. The Debtor's name was added to the Account two days later on Sunday April 7, 2013, the first day the bank was open after the Account had been opened online. On that Sunday the Debtor and his wife went to a brick and mortar branch of the bank to complete paperwork related to the Account. The Personal Deposit Account Agreement signed by the Debtor and his wife on April 7 lists both names on the Account but does not indicate how the Account is held (TBE or otherwise). On April 8, 2013, the Debtor and his wife transferred additional money to the Account, increasing the balance in the Account to $500,000. All the funds that were transferred into the Account were transferred from a bank account owned by the Debtor and his wife (the "Home Account"). The Home Account had been opened when the Debtor and his wife sold their home and the initial funds in the Home Account were the proceeds of the sale of their home, a home that had been titled in the names of the Debtor and his wife.

The Debtor testified that he and his wife planned to use the money in the Home Account to purchase a new homestead and in fact, the Debtor and his wife did purchase a new home in December of 2014. The Debtor and his wife also used other funds from the sale of their home for other purposes, including a $35,000 loan to the Debtor's business. On October 13, 2015, Bank of the West garnished the Account.

The Debtor argues that a 2008 change in Florida law creates a presumption that certain property held by married couples is held as TBE regardless of whether the traditional six unities required to create a TBE are present. The Debtor further argues that the funds deposited in the Account were proceeds from the sale of homestead property that the Debtor planned to reinvest in a new home, and therefore, even if the Account is not TBE, the funds, to the extent they are traceable to jointly owned homestead property, are exempt as TBE.

## ANALYSIS

### a. Presumptions and TBE

Resolution of this dispute is governed entirely by state law. "The nature of a bankrupt's interest in property is determined by state law." *Butner v. U.S.*, 440 U.S. 48 (1978). *See Branch Banking and Trust Co. v. Maxwell*, 2012 WL 4078407 (M.D. Fla. Aug. 24, 2012) ("*Maxwell*"); *Aranda v. Seacoast Nat'l Bank (In re Aranda)*, 2011 WL 87237, (S.D. Fla. Bankr. Jan. 10, 2011) ("*Aranda*"). Whether the property maintains its TBE status is significant because property held as TBE can only be attached by joint creditors of both a husband and wife. *Beal Bank, SSB v. Almand and Assoc.*, 780 So.2d 45.

The six unities required to create a tenancy by the entirety are –

(1) Unity of possession;

    (2) Unity of interest;

    (3) Unity of title

    (4) Unity of time

    (5) Survivorship

    (6) Unity of marriage

*Beal Bank,* 780 So. 2d at 52.

In the seminal case *Beal Bank, SSB v. Almand and Assoc.*, 780 So.2d at 45, the Florida Supreme Court ruled that when personal property (which, in the *Beal Bank* case involved a bank account) is held jointly by a husband and wife, it should be presumed to be held in a tenancy by the entirety unless specifically delineated otherwise, "so long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship." 780 So. 2d at 58.[4]

In closing, the Florida Supreme Court "urged" the Legislature to amend Fla. Stat. §655.79, which, at the time *Beal Bank* was decided, included a presumption that an account held by more than one person was a survivorship account "unless the contract, agreement, or signature card provides otherwise." *Id.* at 62, n. 24.[5] The Florida Legislature apparently responded,[6] and in 2008 Fla.Stat. §655.79 was amended by adding the following sentence to the end of Fla.Stat. §655.79(1) – "Any deposit or account made in the name of two persons who are

---

[4] Prior to *Beal Bank*, a married couple was not entitled to this presumption (unlike with respect to the ownership of real property). Rather, the couple would have to prove their intent to hold their personal property in TBE. After *Beal Bank* the burden shifted to any creditor seeking to disprove the TBE presumption.

[5] The full text of Fla. Stat. 655.79(1) prior to its 2008 amendment was:
    Unless otherwise expressly provided in a contract, agreement, or signature card executed in connection with the opening or maintenance of an account, including a certificate of deposit, a deposit account in the names of two or more persons shall be presumed to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account, less all proper setoffs and charges in favor of the institution, vest in the surviving person or persons.

[6] The legislative history of the 2008 change is sparse, but does indicate that *Beal Bank* was the impetus for adding the last new sentence to the statute.

husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." Thus, with respect to an account held by a husband and wife the statutory presumption in Fla. Stat. §655.79(1) is reversed.

### b. Fla. Stat. §655.79 does not modify the six unities

Bank of the West argues that there is nothing in the legislative history of the 2008 changes to Fla. Stat. §655.79 to suggest that the Legislature intended to upend the requirements necessary to create a tenancy by the entirety. Underscoring its position, Bank of West argues that the additional language of Fla. Stat. §655.79 specifically applies to an account "made" not an account "existing, whenever created."

I agree with Bank of the West that the 2008 addition to Fla. Stat. §655.79(1) codified the presumption judicially established in *Beal Bank*, and, consistent with *Beal Bank*'s holding, the presumption does not change the required six unities. This is underscored by looking at the first sentence of Fla. Stat. §655.79(1), which remained unchanged, that states "[u]nless otherwise expressly provided . . . in connection with the opening or maintenance of an account . . ." there is a presumption of a survivorship account. Had the Florida Legislature intended to eliminate the requirement of the six unities, then, presumably, at a minimum the Florida Legislature would have used the same language that appears in the beginning of section 655.79(1) and would have made clear that the TBE presumption arose upon "opening or maintenance" of an account rather than using the word "made".[7]

---

[7] Since section 655.79(1) was amended, no Florida court has held that that the six unities are no longer required to create a TBE. However, The Florida Bar Journal published an article suggesting there is no longer a requirement to establish the unities because "…the legislative change creates a clear presumption as to bank accounts, but appears to foreclose the possibility of introducing extrinsic evidence to prove intent to create a TBE where the account state 'Jt Ten' or 'joint tenants with right of survivorship' as was allowed in *Beal Bank*."). See Anne Buzby-Walt, Are Florida Laws on Tenancy by the Entireties in Personalty as Clear as We Think?, 85 FLA. BAR J. 8 (Sept./Oct. 2011)

### c. The unity of time may or may not have been satisfied

Thus I now turn, at least momentarily, to whether the Account satisfies the six unities. The only unity in dispute is that of time. Bank of the West relies heavily on *Aranda*, 2011 WL 87237. In *Aranda*, the debtor argued that executing a second signature card with his wife when adding her to the bank account transformed the bank account he had previously opened himself to TBE because he and his wife became "owners" of the TBE account at the same time. Judge Hyman held that executing the new signature card at the same time was not enough since the unities must be satisfied when the account is first opened.[8]

The Debtor argues that the unity of time was met because the Account wasn't completely opened until the Debtor and his wife went to the brick and mortar bank on Sunday April 7, and signed the necessary documents to create the account. However, the evidence doesn't support this. While the Debtor testified that the Account could not be opened until the signature cards were signed, the Debtor's wife testified the Account was open when she finished the on line process. Moreover, Colleen Fineblum, an assistant vice-president of TD Bank testified (by deposition) that the Account was deemed opened by TD Bank on April 5 and then ownership was modified on April 7 when the signature cards were signed. Thus, I find that the Account was opened on line by the wife on April 5.

Alternatively, the Debtor argues that adding himself to the Account one business day after the Account was opened is virtually simultaneous, and since it was always the intent of the Debtor and his wife that the account would be titled in both their names, the TBE formalities are met. Granted, there is some support for this argument - *compare Regions Bank v. Hyman*, 91 F.Supp. 3d 1234 (M.D. Fla. 2015) (indicating account opened by husband with wife signing

---

[8] Judge Hyman did not consider the changes to Fla. Stat. §655.79(1) which took place after the relevant events in *Aranda*, but before the opinion was written.

signature card hours later met the unity of time) *with In re Stephenson*, 2012 WL 4896725 (Bankr. M.D. Fla. 2012) (no TBE when wife's name was added to signature card in 2002, three years after the Debtor opened account). However, because I find the funds in the Account were exempt whether or not the Account satisfied the six unities, I will not address the issue of timing in this opinion.

### d. The funds in the Account were traceable to TBE funds.

The Debtor correctly argues that the funds transferred into the Account were exempt funds, which did not lose their status just because the funds were placed into an account that may not have qualified as a TBE account.

The $500,000 that funded the Account came from the Home Account, an account that was held jointly by the Debtor and his wife. Those funds came from a home that was owned by the Debtor and his wife. While Bank of the West has argued that the Debtor did not provide proof that the Home Account was opened as a joint account or proof that the home owned by the Debtor and his wife was their jointly owned homestead, both ownership in the Home Account and in the sold home are presumed to be TBE and Bank of the West had the burden to prove that in each instance that either the home or the Home Account was otherwise. Bank of the West did not provide any evidence to contradict the Debtor's testimony or his wife's testimony that the home was jointly owned and that the Home Account was opened by them to accept the proceeds of the sale of the home. Moreover, there is no dispute that when the home was sold on March 25, 2013 the net proceeds of that closing, approximately $1.1 million, were put into the Home Account. Thus, I find that the funds in the Home Account, $500,000 of which was transferred 11 days after closing to the Account, were TBE funds.[9]

---

[9] Bank of the West argued in its closing that the funds transferred to the Account lost their exempt homestead status when the Debtor and his wife bought a new home with other funds and when $35,000 of the funds were used by the

Thus, the issue is whether, when the TBE funds were transferred to the Account, and assuming the Account was not a TBE account, did the TBE funds lose their status as TBE property. The answer is "no." Florida law is very clear. Once it is determined that the property is held as TBE, the TBE can only be terminated by the divorce of the spouses, the death of one of the spouses, or an agreement between the spouses. *Maxwell*, 2012 WL 4078407 at *3; *Passalino v. Protective Group Securities, Inc.,* 886 So.2d 295 (Fla. 4th DCA 2004). The TBE is not destroyed by placing TBE funds in an attorney's trust account, *Passalino*, 886 So.2d at 298; it cannot be destroyed by the unilateral act of one spouse without the other to put TBE funds into an account in only one spouse's name, *Maxwell*, 2012 WL 4078407 at *5; it cannot be destroyed when one spouse removes the other spouse's name from a TBE account, *Stomar v. Orlan*, 660 So.2d 111 (Fla. 4th DCA 1995). *See also Beal Bank* 780 So.2d at 53*; Aranda*, 2011 WL 87237 at *3.

In this case the Debtor and his wife testified that as soon as they received the $1.1 million from the sale of their home, they were concerned about losing the money if the bank failed. They each testified that they were aware of the $250,000 per depositor per account FDIC insurance and that they opened the Account[10] to take advantage of that protection. They each testified that it was their intent to use the money to buy a new home and to have some savings. They also testified that it was not ever their intent that the funds would be transferred only to one or the other of them. Bank of the West did not put on any evidence that contradicts this testimony.

---

Debtor to make a loan to his business. This argument misses the point; the funds, even if no longer protected as proceeds of the homestead, nonetheless retained their protected TBE status.

[10] The Debtor also opened an account around the same time to which the wife's name was added, into which account the Debtor and his wife transferred an additional $530,000, also to avail themselves of the FDIC insurance limits.

Consequently, under Florida law the funds held in the Account were, and continued to be, funds held TBE even if the Account does not qualify as a TBE account. Accordingly, the Debtor's motion is GRANTED.[11] Bank of the West shall have fourteen (14) days from the date of this Order to take all steps necessary to release the garnished funds.

# # #

Copies furnished to:
Jordan E. Bublick, Esq.
Jeffrey S. Berlowitz, Esq.

*Attorney Bublick is directed to mail a copy of this Order to all interested parties and to file a certificate of service with the Clerk of the Bankruptcy Court.*

---

[11] Any issues identified in the Joint Stipulation that are not addressed in this opinion are either irrelevant or moot based on my ruling.